**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-1421-GPG

ERIC KING,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
CATHY GOETZ, former Warden FCI Florence;
D.K. LENNON, Acting Warden FCI Florence;
CHARLES A. DANIELS, Warden, USP Florence;
J. OLIVER, Warden, USP Florence;
NICOLE ENGLISH, Regional Director and Former Warden, USP Leavenworth;
JOHN F. WILLIAMS, Warden, FCI Englewood;
CHRISTOPHER GOMEZ, Correctional Institution Administrator, USP McCreary;
GREGORY KIZZIAH, Warden, USP McCreary;
ERLINDA HERNANDEZ, Associate Warden, FCI Florence;
TONYA HAWKINS, Warden, FCI Florence;
DONALD WILCOX;
JEFFREY KAMMRAD;
ROBERT GICONI;
DUSTIN GUSTAFSON;
FREDERICK LOPEZ;
KEVIN CAROLL;
BRANDON PARISH;
RICHARD WHITE;
ALFRED GARDUNO;
TERRA BRINK;
MICHELLE ABRAHAM;
LEANN REYNOLDS;
RONALD BATOUCHE;
LOREENA FRABONI;
D. CHRISTENSEN;
MARK MELVIN;
LIEUTENANT JARED HERBIG, Special Investigative Services, USP Leavenworth;
LIEUTENANT QUEZADA, Special Investigative Services, FCI Englewood;
CAPTAIN SAPP;
LIEUTENANT COOPER;
OFFICER HAIGHT;
OFFICER WILLIS;
LIEUTENANT STARCHER; and

JOHN DOES 1-10, Unknown Federal Agents or Employees (FCI Florence Does, USP McCreary Does, USP Leavenworth Does, and USP Lee Does),

   Defendants.

---

## FIRST AMENDED COMPLAINT
## FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS

### JURY TRIAL DEMANDED

---

## INTRODUCTION

1.      While incarcerated at various federal prisons between the years 2018 and 2021, Plaintiff Eric King was threatened, assaulted, and placed under threat of death and/or serious bodily injury by violent white supremacist prisoners of various facilities, and by various Bureau of Prisons ("BOP") correctional officer defendants.  He was held in substandard and illegal conditions of confinement and denied basic health and hygiene care. Defendants deliberately targeted Plaintiff due to his political and social beliefs. Defendants negligently or deliberately disregarded the substantial risk to Plaintiff's health and safety in placing him, a known white anti-racist, in close contact with known white supremacist prisoners. To this day, Defendants have kept Plaintiff in segregated housing for over 1000 days with no legitimate penological basis, and without granting him the opportunity for adequate due process.

### JURISDICTION AND VENUE

2.      This is a civil rights action arising from a pattern of harassment and abuse violating Plaintiff's constitutional rights, beginning with a physical assault on Plaintiff, on or about August 17, 2018, and continuing through various illegal acts perpetrated by defendants from that time through the present. Plaintiff sues Defendant Federal Bureau of Prisons (BOP) under the Administrative Procedure Act. Plaintiff sues the individual named defendants, and

other currently unknown/unidentified federal agents and employees of the United States and the BOP, under *Bivens v. Six Unnamed Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), and its progeny.

3.     Plaintiff filed a tort claim notice under the Federal Tort Claims Act (FTCA) on February 23, 2021, using Standard Form 95.  There has been no response.  Plaintiff intends to move to amend the complaint if there has been no response after six months have passed from that filing, to add an FTCA claim (in the alternative to the *Bivens* claim). *See* 28 U.S.C. 2675(a) (claim deemed constructively denied after six months).

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(b) and 5 U.S.C. § 551 *et seq*. (Administrative Procedure Act). Plaintiff brings claims against agents, servants, and employees of BOP, FCI Florence, FCI Englewood, USP Lee, USP Leavenworth, and USP McCreary; and other governmental agents, servants, and employees acting within the scope of their agency and employment under the Fourth and Eighth Amendments to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

5.     Pursuant to 28 U.S.C. § 1391, venue lies in this district because the overwhelming majority of the acts and omissions alleged herein occurred in the District of Colorado.

<u>**PARTIES**</u>

6.     Plaintiff Eric King (hereafter "Plaintiff") is an individual. Plaintiff is currently incarcerated at the Federal Correction Institution at Englewood, Colorado. His official release date is on or about December 27, 2023. Plaintiff is 35 years old, 5'7" and weighs approximately 150 pounds.

7.      Defendants United States and BOP operated, at all relevant times, correctional and detention institutions throughout the United States, including the Federal Correction Institution at Englewood, Colorado ("FCI Englewood"); the Federal Correction Institution at Florence, Colorado ("FCI Florence"); the United States Penitentiary at McCreary, Kentucky ("USP McCreary"); the United States Penitentiary at Leavenworth, Kansas ("Leavenworth"); and the United States Penitentiary at Lee, Virginia ("USP Lee"); as well as the Federal Transfer Center through which federal prisoners are transported to USP Lee, where the relevant incidents occurred. All aforementioned facilities are federal detention and/or transfer facilities, which hold male prisoners.

8.      These facilities are operated by the BOP, a division of the United States Department of Justice, which is itself an agency of Defendant United States.

9.      The following Defendants (hereafter "Warden Defendants") were employed as Wardens or Associate Wardens at all times relevant to the complaint, either at FCI Florence or FCI Englewood (as further explained herein): Tonya Hawkins, Cathy Goetz, D.K. Lennon, Charles Daniels, J. Oliver, John F. Williams, and Erlinda Hernandez. A Warden is the chief executive officer of the facility, and is responsible for the total operation of the facility. All employees of the Bureau of Prisons who handle discipline are "the direct subordinates of the warden who reviews their decision." *Cleavinger v. Saxner*, 474 U.S. 193, 204, 106 S. Ct. 496, 502 (1985). The Warden delegates responsibility to executive staff and department heads who assist the Warden in managing the institution. Assistant Wardens act in a supervisory capacity, and delegate responsibility to other employees. The Warden Defendants are sued in their individual capacities.

10.     Defendants Donald Wilcox and Robert Giconi were correctional officers who, at all times relevant times to the complaint, were employed at FCI Florence.

11.     Defendant Dustin Gustafson was a correctional officer employed, at all relevant times to the complaint, at FCI Englewood.

12.     Defendants Wilcox, Giconi, and Gustafson are and were acting within the scope of their duties as agents, servants, and employees of the BOP and under color of federal law (Wilcox and Giconi at FCI Florence and Gustafson at FCI Englewood). On information and belief, they committed physical assaults against King, and then conspired with other defendants together to conceal their assault and further violate King's civil rights, and took other actions described herein. They are sued in their individual capacities.

13.     The following defendants (hereafter "FCI Florence Defendants") are or were correctional officers or employees employed at United States Prisons in the State of Colorado at all times relevant to the complaint, either at FCI Florence or USP Florence, and were acting within the scope of their duties as agents, servants, and employees of the BOP and under color of federal law: Donald Wilcox; Robert Giconi; Jeffrey Kammrad; Frederick Lopez; Kevin Caroll; Brandon Parish; Richard White; Alfred Garduno; Terra Brink; Michelle Abraham; Leann Reynolds; Ronald Batouche; Loreena Fraboni; D. Christensen; and Mark Melvin. On information and belief, these defendants enabled and/or failed to prevent assaults against Plaintiff, and subsequently conspired with other defendants together to conceal the assaults and further violate King's civil rights, and took other actions described herein. They are sued in their individual capacities.

14.     The following defendants (hereafter "FCI Englewood Defendants") were or are, at all times relevant to the complaint, correctional officers or employees employed at United States

5

Prisons in the State of Colorado, at FCI Englewood: Lieutenant Cooper; Lieutenant Starcher, Officer Haight, Captain Sapp, Lieutenant Quezada, and Defendant Gustafon. On information and belief, these defendants enabled and/or failed to prevent assaults against Plaintiff, and subsequently conspired with other defendants together to conceal the assaults and further violate King's civil rights, and took other actions described herein. They are sued in their individual capacities.

15.      Defendants Nicole English and Lieutenant Jared Herbig are or were at all times relevant to the complaint employees of USP Leavenworth (hereafter, USP Leavenworth Defendants). Defendant English was the Warden of USP Leavenworth at all relevant times to the complaint. The Warden delegates responsibility to executive staff and department heads who assist the Warden in managing the institution. As Warden, Defendant English was responsible for denying plaintiff his phone privileges and ordering plaintiff to solitary confinement in the "Special Housing Unit" (SHU); and when she did so she was acting within the scope of her duties as an agent, servant, and employee of the BOP and under color of federal law. Defendant Herbig assisted Warden English in carrying out these actions. They are sued in their individual capacities.

16.      Defendant Christopher Gomez and Defendant Gregory Kizziah are and were at all times relevant to the complaint Correctional Institution Administrator and Warden of USP McCreary, respectively (hereafter, USP McCreary Defendants). These Defendants are executive officers of the facility, and are responsible for the total operation of the facility. The Warden delegates responsibility to executive staff and department heads who assist the Warden in managing the institution. They are and were acting within the scope of their duties as agents,

servants, and employees of the BOP and under color of federal law. They are sued in their individual capacities.

17.     Plaintiff is ignorant of the true names and capacities of the other agents and employees of the United States and the BOP who are sued herein as FCI Florence Does, USP McCreary Does, USP Leavenworth Does, and USP Lee Does (Does 1-10). Plaintiff is informed and believes and thereon alleges that each of said fictitiously named Defendants is responsible in some manner for the actions and damages alleged herein. Plaintiff is furthermore informed and believes and thereon alleges that each of said fictitiously named Defendants was the agent, servant, and employee of defendant United States and/or its agent BOP, and was acting within the scope and course of his or her agency and employment and with the knowledge, ratification, and consent of each respective defendant and principal actor. Plaintiff will seek leave to amend this Complaint when their true names and capacities have been ascertained.

## ALLEGATIONS OF FACT

18.     On June 28, 2016, Plaintiff was sentenced to ten years in prison for an attempted 2014 arson of an elected official's office in Kansas City, Missouri. Plaintiff committed this act in solidarity with the Ferguson uprising and rebellion – a movement that took place over the summer of 2014 in response to the Ferguson police murder of Michael Brown. At his sentencing, Plaintiff spoke on the record about his political motivations for committing his criminal act, saying "The government in this country is disgusting. The way they treat poor people, the way they treat brown people, the way they treat everyone that's not in the class of white and male is disgusting, patriarchal, filthy, and racist."

19.     Because of the overtly political nature of his crime and conviction, and the fact that he is a small white man castigating white supremacy in solidarity with people of color within

a prison system that exacerbates racial tensions, Plaintiff was exceptionally vulnerable to abuse from the moment he started serving his sentence. However, it was only after becoming the victim of a physical assault by Defendant Wilcox that the harassment became an ongoing pattern of abuse, enabled by collusion and conspiracy between the Defendants and unknown prisoners aligned with white supremacist gangs.

20.     Plaintiff first arrived at the FCI Englewood complex in August 2016 following his sentencing. He was housed in general population and, aside from one brief stint in 2017, was never in the SHU (Segregated Housing Unit). Aside from the 2017 incident, Plaintiff King received no disciplinary reports and was never placed in administrative segregation. Beginning in 2018, however, Plaintiff began to be targeted in a pattern of harassment and abuse by BOP employees.

21.     In part because of his underlying conviction, and in part because of the advocacy and education Plaintiff engages in while incarcerated, upon information and belief, he is known to all BOP employees and prisoners as an active and avowed anti-racist. As a white man, being known as an anti-racist in a BOP facility is a risky and dangerous position to be in; his political commitments and activities expose him to dangers not just from white supremacist prisoners, but also some BOP guards who appear to share ideology with white supremacists.

22.     Beginning in 2018 and continuing until the present time, Plaintiff has been targeted, attacked, and retaliated against, and was made to fear for his life and safety as a result of his political and anti-racist beliefs and advocacy.

23.     For the past three years, since August 17, 2018 (over 1000 days), Plaintiff has been held in the SHU continuously and with no explanation. Plaintiff is one of only 48 people currently in BOP custody who has been held in solitary confinement for over a year.[1]

24.     Plaintiff began to have phone privileges denied at USP Leavenworth.

25.     For fourteen months of his confinement at FCI Englewood, he was denied all access to the phone. Plaintiff was never given an adequate reason for this global phone denial.

26.     Defendants' continued unusually lengthy incarceration of Plaintiff in solitary confinement is the thread that connects the various physical assaults, emotional degradation, intimidation, and other forms of targeted abuse Plaintiff has suffered at the hands of Defendants, establishing a pattern.

*A Summary of the Incidents and Timeline*

27.     The nature of Plaintiff's targeting and harassment and abuse at the hands of BOP officials has been continuous and ongoing since 2018. For clarity, an abbreviated summary of all the incidents included in this complaint follows. This is not meant to be inclusive of all incidents, but rather provides a guide.

28.     Beginning in late May or early June 2018, to the present, Plaintiff has been held in the SHU continuously or almost continuously, at different federal facilities, for over 1,000 days.

29.     In August of 2018 Plaintiff was physically assaulted by Defendant Wilcox and others FCI Florence Defendants at FCI Florence, as alleged in further detail in paragraphs 38-56.

---

[1] BUREAU OF PRISONS, RESTRICTED HOUSING STATISTICS, https://www.bop.gov/about/statistics/statistics_inmate_shu.jsp (last checked August 4, 2021).

30.     From approximately August 17 through August 22, 2018, Plaintiff was held in solitary confinement at USP Florence on the order of FCI Florence Defendants and Warden Defendants as alleged in further detail in paragraphs 57-59.

31.     On or about August 22, 2018, Plaintiff was transferred to USP Leavenworth, where he was held in the SHU for about six months at the behest of USP Leavenworth Defendants, and on information and belief at the behest of some FCI Florence Defendants, including Defendant D.K. Lennon and Defendant Cathy Goetz, as alleged in further detail in paragraph 59.

32.     In or about February 2019 Plaintiff was again transferred, this time to USP McCreary, where he was again housed continuously in the SHU at the behest of USP McCreary Defendants. While at McCreary, Plaintiff was subjected to attacks from known white supremacist prisoners, attacks which were orchestrated and abetted by BOP defendants, as alleged in further detail in paragraphs 60-69.

33.     In or about June 2019, Plaintiff was transferred to USP Lee, where he was held in solitary confinement and denied access to phone, including legal calls, mail, and basic items like a toothbrush and utensils to eat with, at the behest of USP Lee Defendants, as alleged in further detail in paragraphs 69-71.

34.     In August 2019 Plaintiff was transferred back to FCI Englewood. He remained in the SHU at the behest of FCI Englewood Defendants and Defendant Wardens.

35.     In May 2020 Plaintiff was assaulted by Defendant Gustafson, as alleged in further detail in paragraphs 79.

36.     In June 2020 Plaintiff was assaulted by Defendant Gustafson, as alleged in further detail in paragraphs 81-85.

*The August 17, 2018, Assault and Torture*

37.     On or about August 17, 2018, Plaintiff was ordered to the lieutenants' office at FCI Florence for questioning. Plaintiff King was not told why he was being questioned, but suspected that it related to an email he had sent earlier in the day.

38.     When Plaintiff arrived at the lieutenants' office, he was kept waiting outside. Eventually, Defendant Wilcox emerged, and approached Plaintiff with Defendant Kammrad.

39.     As soon as Plaintiff saw Defendant Wilcox, he knew that he was likely to be in physical danger. Defendant Wilcox is known as a bully and had harassed Plaintiff in the past. Plaintiff's fears were compounded when, after someone asked Defendant Wilcox if he wanted assistance, Wilcox responded, laughing, "No, you don't want to see this."

40.     Defendant Wilcox ordered King to accompany him to a room for questioning. From previous experience, and from conversations with other prisoners, Plaintiff knew that there were two rooms lieutenants frequently took prisoners into for questioning: one was a small-sized office with cameras positioned at the entrance; the other was a functional storage area with lockers, brooms, and other maintenance items, with no cameras nearby. Plaintiff knew that the small office was commonly used by lieutenants for legitimate investigatory questioning, whereas the storage area was used when officers intended to harass, intimidate, or attack prisoners. As Defendant Wilcox directed Plaintiff to the storage area, Plaintiff feared that he was going to be assaulted.

41.     Defendant Wilcox and Defendant Kammrad escorted Plaintiff into this storage area, and immediately backed him into a corner. Defendant Wilcox began screaming at Plaintiff. Defendant Wilcox was cursing at Plaintiff and threatening him, saying that he wasn't a "real man." Defendant Kammrad was present and did nothing to prevent this harassing behavior.

42.    Defendant Wilcox told Defendant Kammrad to leave, saying he could "handle this himself." Defendant Kammrad left, and Plaintiff believed he would be harmed.

43.    Sure enough, as soon as Defendant Kammrad left the room, Defendant Wilcox moved himself even closer to Plaintiff, so that his chest bumped against Plaintiff's. Plaintiff had to take several steps back to avoid physical contact. Defendant Wilcox then resumed cursing and threatening Plaintiff, this time calling him a "terrorist."

44.    At this point, Plaintiff King was extremely concerned for his physical safety. Not only was Defendant Wilcox in a position of power over him, as a correctional officer, but Defendant Wilcox is considerably larger than Plaintiff.

45.    Defendant Wilcox shoved Plaintiff, causing him to fall back and hit the wall. Defendant Wilcox then punched Plaintiff in the face twice, causing bruising and swelling. Plaintiff suffered a black eye on his left eye. Four days after this assault, Plaintiff's injuries were still visible.



*Plaintiff above left, in an earlier photograph, and Plaintiff above right, four days after being assaulted*

46.    Defendant Kammrad returned to the room, and found Plaintiff standing calmly with his hands behind his head. Despite the fact that Plaintiff was not an active threat, he nevertheless put out an alert, and threw Plaintiff to the ground.

47.    Shortly thereafter, Defendants Richard White, Leann Reynolds, Terra Brink, Alfred Garduno, and Doe FCI Florence Defendants arrived, and further assaulted Plaintiff while

he was being held down by Defendant Kammrad. For several minutes Defendants Kammrad, White, Reynolds and Doe FCI Florence Defendants kicked, punched, and further assaulted Plaintiff while he was held down.

48.     Defendant Giconni requested a restraint chair for Plaintiff. Eventually a Doe FCI Florence Defendant brought a restraint chair. Defendant Brandon Parrish and Doe FCI Florence Defendants strapped Plaintiff to the chair. They then removed Plaintiff, who did not resist, to a segregation cell. There Defendants Kammrad, Kevin Caroll, Mark Melvin, Michelle Abraham, Alfred Garduno, Richard White, Brandon Parrish, Fredrick Lopez and Doe FCI Florence Defendants participated in placing and maintaining Plaintiff in hard four-point restraints as punitive retaliation. He was not spitting, attempting physical resistance or assault. Plaintiff was calm and obeyed commands.

49.     Defendants Brandon Parrish, Alfred Garduno, and Doe FCI Florence Defendants participated in stripping Plaintiff of all clothing, except his boxers.

50.     According to BOP Program Statement PS5566.06, 28 CFR 552.20-27, and 29 CFR 1910, four-point restraints are intended to be used solely for the purpose of restraining and calming an out-of-control prisoner, and only the Warden may make the decision to place a prisoner in four-point restraints. At the time he was placed in restraints Plaintiff King was not out of control, rather he was calm and peaceful. On information and belief, the Warden did not authorize the decision to place Plaintiff in four-point restraints, in violation of BOP regulations. Instead, hard four-point



*Plaintiff in four-point restraints on August 18, 2018*

13

restraints were authorized by Defendant D. Christensen, who was not the Warden or acting Warden at the time. Defendants utilized four-point restraints solely as a retaliatory, humiliating, and punitive measure against Plaintiff, stripping off his clothing, leaving him naked and exposed. Defendants left him in four-point restraints, with his wrists and feet cuffed to the corners of a platform, for many hours.

51.     Plaintiff was not given clothing or a blanket, in violation of BOP regulations.

52.     During the first hour, Defendant Giconi and an unknown Doe FCI Florence Defendant verbally and physically tortured Plaintiff King. Defendant Doe first approached Plaintiff, who was helpless and defenseless because of the four-point restraints, and put his hands over Plaintiff's mouth, cutting off his breathing for what felt like at least a minute. At the same time, Defendant Giconi put a shield over Plaintiff's face and pressed it down for several minutes, crushing Plaintiff's nose and further hindering his ability to breathe. Plaintiff was terrified and in significant pain and distress. After Defendant Giconi tired of suffocating Plaintiff, he moved on to other forms of abuse. Defendant Giconi and Doe Defendant(s) stood over him taunting and insulting him. They threatened to have him raped by other prisoners and to send him to another BOP facility and tell the violent prisoners there to kill him as soon as he got to the yard. Defendants told Plaintiff that such retaliation was "street justice" and what he deserved. In fact, as discussed *infra* at paragraphs 62-68, Plaintiff was assaulted by known violent prisoners shortly after being transferred to another BOP facility only days after Defendant Giconi made this threat.

53.     Christopher Harvey, BOP Case manager, operated a camera filming while Plaintiff was restrained and later stated he did not believe the footage was interrupted or broken in any way.

54.     Upon information and belief, however, there is a gap of around 15 minutes from the video footage of Plaintiff's confinement in four-point restraints from August 17, 2018. Upon information and belief, some Doe FCI Florence Defendants conspired to remove all footage of Defendant Giconi's assault on Plaintiff from the video footage or, in the alternative, conspired to deliberately not follow BOP regulations, ensuring that the assaultive and illegal encounter would not be recorded or preserved.

55.     At some point during the four-point restraint incident, Defendants Lorena Fraboni and Ronald Batouche medically examined Plaintiff, and both improperly determined Plaintiff did not need further medical care despite his evident injuries, declined to provide assistance, and declined to intervene in the torture of Plaintiff by other Defendants.

*Unconstitutional Conditions of Confinement*

56.     Following the August 17, 2018, assault and torture, FCI Florence Defendants and Warden Defendants placed Plaintiff in solitary confinement for five days without written or verbal explanation. He was also denied adequate medical treatment after repeatedly requesting needed medical care for the black eye and bruising he had received at the hands of Defendants. He was held in a cell that did not have functioning facilities; the toilet was clogged with someone else's feces and the cell was covered in the other person's feces. Despite his complaints, nothing was done to ameliorate the extremely unhygienic and dangerous conditions, clearly intended as retaliatory punishment.

57.     During the five days Plaintiff was held in this torture chamber without explanation or amelioration, he was also denied visits with his attorney. Some of the Defendants attempted to coerce and/or threaten him into signing a statement that stated that he had hit Defendant Wilcox. Defendants claimed if Plaintiff signed the statement, they would allow him to

communicate with his attorney. Plaintiff refused to sign the false statements. Plaintiff did sign a

form consenting to be interviewed as part of his Miranda warnings.

58.     After five days, Plaintiff was suddenly transferred to USP Leavenworth without

explanation, where he was again placed in solitary confinement without explanation. Upon

information and belief, Defendants Cathy Goetz, J. Oliver, Charles Daniels, and D.K. Lennon

authorized Plaintiff's transfer and solitary confinement. Plaintiff was held in solitary confinement

for six months. Neither he nor his lawyer were ever given an explanation or justification as to the

conditions of his confinement.

59.     At USP Leavenworth, Defendant Herbig met with Plaintiff and imposed a

"permanent" and total phone ban. Normally SIS Policy requires review of a ban every six

months, and permits one call per month no matter a prisoner's ban status. Upon information and

belief, Defendant English approved this ban and Plaintiff's continued isolation.

60.     Suddenly in late February of 2018, again with no documentation or explanation,

Plaintiff was transferred to USP McCreary, where he was housed in the SHU for four months.

Upon information and belief, this transfer and isolation was done at the behest of USP McCreary

Defendants, Defendants Christopher Gomez, and Defendant Gregory Kizziah. He was

subsequently transferred to USP Lee for thirteen days, where he was again held in solitary

confinement. Finally, he was transferred to FCI Englewood. In addition, Plaintiff was made to

spend time at the following transfer facilities (in order): (1) FTC Oklahoma; (2) FTC Atlanta on

two separate occasions; and (3) Grady County jail in Oklahoma. On information and belief, this

transfer and continued isolation was at the behest and approved by Warden Defendants. Despite

filing multiple grievances at every stage, Plaintiff was given no adequate explanation for the

transfers or his confinement in the SHU.

61.     Sudden, inexplicable transfers are a known method of retaliation against prisoners by correctional officers. This sort of retaliation and harassment is known as "diesel therapy."[2] For political anti-racist prisoners like Plaintiff, there are extra risks inherent to such "diesel therapy" -- in addition to being widely known as an anti-racist activist, new prisoners stand out and are at increased risk from dangerous gangs. Plaintiff in particular was placed at increased risk of violence from white supremacist gangs as a result of his many unnecessary and retaliatory transfers.

62.     While Plaintiff was held at USP McCreary, he became aware that he was in danger from a white supremacist gang that is known to be operating within McCreary. He learned that unknown Defendant guards at McCreary were conspiring with white supremacist gang members to threaten and endanger Plaintiff, due to his anti-racist politics.

63.     During one such incident, Plaintiff was taken out of his cell at 5:00 am by multiple unknown Doe USP McCreary Defendant correctional officers and brought to a Lieutenant's office holding cell. There Doe USP McCreary Defendants (who were Lieutenants) told Plaintiff that they had become aware of threats made against Plaintiff by a white supremacist gang.

64.     An SIS ("Special Investigative Services") agent appeared 30 minutes later and asked Plaintiff if he felt safe. Plaintiff knew that if he did not answer "yes, I feel safe" when asked that question, he would be exposed to dangerous repercussions from the guards and prisoners.

_____

[2] *Diesel Therapy*, WIKIPEDIA (May 19, 2021 9:45AM) https://en.wikipedia.org/wiki/Diesel_therapy; Michael Rothenberg, *The Federal Prisoner Transit System – aka "Diesel Therapy" – Is Hell*, THE MARSHALL PROJECT (Aug. 15, 2019), https://www.themarshallproject.org/2019/08/15/the-federal-prisoner-transit-system-aka-diesel-therapy-is-hell.

65.     Accordingly, Plaintiff grudgingly responded that he felt safe. The unknown Defendants responded that they were aware that a nationally-known violent white supremacist gang, active in prisons across the country, wanted to "fuck [Plaintiff] up" due to his anti-racist political beliefs, but that if Plaintiff felt safe, they would not interfere. At that point, the unknown Doe Defendants told Plaintiff he could leave, but directed him to exit through a different door than the one through which he entered. When Plaintiff walked through the door, he realized that, rather than being in a hallway or a public space on his way back to his cell, he had entered into an enclosed, locked outdoor area. Inside this room was a prisoner known to be a member of the aforementioned gang. The prisoner attacked Plaintiff. The Doe Defendants did nothing to intervene, but stood nearby while the attack occurred for at least a minute -- a long time for an observed fight in prison to occur.

66.     As a result of this assault Plaintiff suffered physical injuries, including a black eye and bruising.

67.     Plaintiff also received a disciplinary citation for fighting as a result of this assault.

68.     About ten days after the assault, Plaintiff was placed in a cell with another known white supremacist in another attempt to threaten Plaintiff, causing him to suffer fear for his life and severe emotional distress. Next a known dangerous inmate was moved into Plaintiff's cell. Unsurprisingly, this known dangerous prisoner physically assaulted Plaintiff, causing him to suffer injuries including black eyes, a split lip, and significant bruising again -- the second assault in two weeks.

69.     Despite these assaults Defendant Gomez and Doe Defendants took no action to protect Plaintiff.

70.     The collusion between guards and white supremacist gangs to intimidate, threaten, and assault Plaintiff did not end once Plaintiff was transported out of USP McCreary a few days later. While in transit to USP Lee, Plaintiff was held in a Federal Transfer Center for a few weeks. While there, he was placed in the same tier as a prisoner who was known to him as the leader of another white supremacist gang. Because Plaintiff was known to that prisoner as an anti-racist activist, this white supremacist gang leader told Plaintiff that if he ever saw him in the yard, he would kill him.

71.     For the duration of his confinement at USP Lee, Plaintiff was denied legal calls, reading material of any kind, and basic personal hygiene items like toilet paper, a toothbrush, and toothpaste. He was also denied writing materials, which prohibited him from filing timely grievances. Plaintiff does not know the identity of the people who made these denials and therefore alleges USP Lee Does are responsible for these events.

*A Continuing Pattern of Mistreatment, Abuse, and Unconstitutional Conditions of Confinement*

72.     The events of August 17, 2018, and Plaintiff's subsequent unexplained transfers and solitary confinement are not isolated events. Rather, this mistreatment of Plaintiff were early incidents of a pattern of collusion among the Defendants to mistreat and retaliate against Plaintiff because of his perceived and constitutionally protected political beliefs.

73.     As discussed *supra*, Plaintiff has been held in the SHU for more than 1000 days.

74.     BOP's policies include Program Statement 5270.11 (https://www.bop.gov/policy/progstat/5270.11.pdf), issued pursuant to 28 C.F.R. §§ 541.10-.33. These federal regulations and Program Statement 5270.07 govern Special Housing Units.

75.     According to Program statement 5270.11, prisoners are placed in the SHU for either disciplinary or administrative reasons. Program Statement 5270.11 requires that all

prisoners receive notice of the reasons they have been placed in the SHU. The prisoner must receive notice detailing the reasons, depending on the reason for the placement, either within 24 hours of the placement, or at the end of a discipline hearing. 28 C.F.R. § 541.25. The Program Statement also requires that the placement be reviewed by the Segregation Review Official after a certain amount of time, ranging from three days to thirty days, depending on the reasons for placement in the SHU. 28 C.F.R. § 541.26. These reviews must be performed at a hearing attended by the prisoner. 28 C.F.R. § 541.26.

76.     Plaintiff has challenged his placement in the SHU, pursuant to 28 C.F.R. § 541.26(d). He has not received a response. He has never been granted a review hearing. To this day he does not know why he is continually held in the SHU, nor has he been given any meaningful mechanism of questioning or challenging his placement, as required by the Program Statement.

77.     Plaintiff's confinement in the SHU continuously for more than 1000 days, in direct violation of the BOP's own procedures in Program Statement 5270.11, is just one aspect of the pattern of targeted abuse he has faced from BOP officials due to his political beliefs and actions.

78.     Defendant Gustafson in particular has engaged in a pattern of verbally and physically assaulting King while he has been incarcerated in Englewood. Over the course of King's incarceration at FCI Englewood, Defendant Gustafson has verbally harassed him and issued baseless disciplinary citations. Defendant Gustafson would frequently call Plaintiff names, not allow him to go to the shower, or to recreation. Frequently these taunting sessions would result in Defendant Gustafson issuing disciplinary citations for fabricated infractions. Sometimes the verbal abuse would rise to physical abuse.

79.     In May 2020, Defendant Gustafson grew frustrated when Plaintiff refused to engage or respond to his verbal insults, and entered Plaintiff's cell and threw a book, hitting Plaintiff. Another officer, Defendant Haight, was present and witnessed this assault and did nothing to prevent it. Defendant Haight did pull Defendant Gustafson out of Plaintiff's cell. Plaintiff asked for a supervisor and was directed to Defendant Cooper who refused to file a report, as required by BOP policy, and sent Plaintiff to Defendant Starcher. Defendant Starcher, who was also required per BOP policy to file a report and investigate staff conduct, also refused to file a report or permit Plaintiff to file a report on his own behalf.

80.     Had Defendants followed BOP policy as required, Defendant Gustafson would likely not have been permitted to work with or be around Plaintiff. Instead, Defendants' actions permitted and enabled Defendant Gustafson to assault Plaintiff again.

81.     Several days later, on June 18, 2020, Defendant Gustafson returned to further harass Plaintiff via a baseless search of Plaintiff's cell. Plaintiff left his cell and went to the shower so as not to be in the range of Defendant Gustafson's harassing tactics during the search, but could still see what Defendant was doing. Plaintiff became aware that defendant Gustafson was removing nearly all of Plaintiff's personal items from his cell, rather than performing a standard search. From the shower area, directly adjacent to Plaintiff's cell, Plaintiff commented on the unorthodox nature of the search, and asked Defendant Gustafson to leave his personal items alone. In response, Defendant Gustafson handcuffed Plaintiff with his hands behind his back, physically removed him from the shower, and began a search of Plaintiff's person, despite the fact that Plaintiff was wearing nothing but underwear. Defendant Gustafson used a metal detection wand during his search of Plaintiff's person, and began wielding it as a weapon, ordering Plaintiff to lift up his feet and then smacking the bottom of his foot and his ankle with

the wand. Plaintiff asked Defendant Gustafson to stop. Gustafson responded that he would "fuck him up" if he didn't lift his foot. Plaintiff complied, and Gustafson again hit Plaintiff with the wand. Plaintiff put his foot down in response, and Gustafson grabbed Plaintiff by the arms, and threw him to the ground. Plaintiff was unable to protect his head and face or deflect his fall because his hands were cuffed behind his back. Plaintiff landed directly on his head and lost consciousness. When he awoke, he realized that Defendant Gustafson's knee was on his neck, he was covered in blood from a head wound, and he could barely breathe. Plaintiff thought Defendant Gustafson would kill him.

82.     Defendant Willis watched at least part of the assault and did not intervene.

83.     Plaintiff was transported to a medical center where he was given a CT scan and required six stitches to heal his head wound. Plaintiff also suffered a serious concussion and severe vertigo for several months, rendering him unable to walk.

84.     Defendant Gustafson issued Plaintiff a disciplinary citation for attempted assault to cover up his assault of Plaintiff. Regional Disciplinary Hearing Officer Evelyn Keller found this citation not credible.

85.     Defendant Gustafson filed multiple fabricated disciplinary citations as part of his ongoing campaign of retaliation and abuse of Plaintiff, and Plaintiff has been denied a substantial amount of "good time" as a result of these fabricated citations.

86.     Plaintiff remains in the SHU at the behest of Defendant Quezada and Defendant Sapp, who have been in control of SHU assignments for about the last two years.

87.     In addition, Defendant Sapp continues to deny Plaintiff inmate mail privileges.

*The Physical and Mental Toll*

88.     Each of the Defendants were factually and legally responsible for the injuries and damages suffered by Plaintiff. In addition, agents and employees of the United States and the BOP, including but not limited to each of the Defendants sued herein, gave consent, aid, and assistance to each of the Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein.

89.     At all material times, the acts or omissions of each individual defendant were grossly negligent, objectively unreasonably, intentional, wanton, willful, reckless, malicious, and constituted deliberate indifference to Plaintiff's rights.

90.     As a result of the foregoing, Plaintiff suffered a wide range of physical, mental and emotional harms including, but not limited to:

a.   Concussion

b.   Facial lacerations requiring stitches

c.   Multiple contusions of the head, face, and body

d.   Disorientation

e.   Headaches

f.   Memory loss

g.   Inability to concentrate

h.   Sleeplessness

i.   Physical pain

j.   Trauma, emotional suffering, pain, humiliation, emotional distress and loss of enjoyment of life.

91.     Plaintiff also suffered damages in the form of decreased "good time" sentence reductions as a result of Defendants' fabricated disciplinary citations, specifically including but not limited to the false citations issued by Defendant Gustafson.  It is also foreseeable that Plaintiff will incur special damages (including medical expenses) upon his release from prison due to ongoing physical and emotional consequences of these injuries.

*Exhaustion of Administrative Remedies*

92.     Plaintiff King has attempted to resolve his various complaints through each relevant prison's grievance procedures. He has exhausted all possible administrative appeals. See 28 C.F.R. §§ 542.10-19; Administrative Remedy Program, Program Statement 1330.18. Therefore, pursuant to 42 U.S.C. § 1997e(a) he now brings this action for relief.

93.     Plaintiff's claims are all timely asserted, as they sufficiently related, arose from the same underlying constitutional violations and/or unlawful actions by Defendants, and are therefore asserted under the continuing violation doctrine. Under the continuing violation doctrine, the statute of limitations will not begin to run until the last violation occurs; therefore, the statute of limitations began to run on the date of the most recent assault, in June 2020.

94.     In the alternative, the statute of limitations on Plaintiff's claims related to the assault he suffered on August 17, 2018, has been equitably tolled by the delays in administrative exhaustion, required by 42 U.S.C. § 1997e(a), caused entirely by the BOP and not in any way caused by Plaintiff; and the statute of limitations on Plaintiff's claims related to all subsequent assaults are within the applicable statute of limitations period.

## FIRST CAUSE OF ACTION

### Count One
### Conspiracy to Violate Plaintiff's Constitutional Rights – *Bivens* claim
### (against All Defendants)

95.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

96.     By their actions in denying Plaintiff medical care, holding him in unlawful conditions of confinement, assaulting him and allowing him to be assaulted, subjecting him to abusive "diesel therapy," and denying him access to the mail, to the phone, and to the grievance process, the individual Defendants conspired, and acted in concert with each other, to deprive Plaintiff of his constitutional rights.

97.     The conspirators engaged in overt acts in furtherance of the conspiracy, including but not limited to the acts alleged *supra*.

98.     The Defendants further conspired to engage in abusive behavior towards Plaintiff, to enable such abusive behavior by others, and to cover up the abusive behavior after the fact.

99.     The conspiracy targeted and harmed Plaintiff's rights as protected under the Fourth, Eighth, and Fourteenth Amendments, as described in detail herein.

100.     The individual Defendants are liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

### Count Two
### Deliberate Indifference to Plaintiff's Constitutional Rights – *Bivens* claim
### (against All Defendants)

101.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

102.     By their actions in permitting Plaintiff to be held in unlawful conditions of confinement; to be assaulted; and to be denied medical care, access to the mail, the phone, and

the grievance process, knowing that such deprivations violated his constitutional rights, the

individual Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

103.    The Defendants further knowingly enabled and were indifferent to the overt acts

of others, specifically, other Defendants' physically abusive behavior towards Plaintiff.

104.    Such deliberate indifference targeted and harmed Plaintiff's rights as protected

under the Fourth, Eighth, and Fourteenth Amendments, as described in detail herein.

105.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages

Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for

medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life,

and punitive damages against the individual defendants in an amount according to proof.

**Count Three**
**Excessive Force – *Bivens* claim**
**(against Defendants Wilcox, Giconi, Gustafson, Kammrad, White, Reynolds, Brink,**
**Garduno, and Doe Defendants)**

106.    Plaintiff restates and realleges each and every paragraph of this Complaint as if

fully set forth here.

107.    By their actions as described herein, Defendants Wilcox, Giconi, Gustafson,

Kammrad, White, Reynolds, Brink, Garduno, and Does, under color of federal authority,

subjected Plaintiff to a deprivation of rights, privileges, or immunities secured by the

Constitution, namely, his right to freedom from excessive force or threat of force.

108.    As a direct and proximate cause of the actions described herein, Plaintiff

sustained economic and noneconomic damages, including physical and mental pain and suffering

and loss of liberty, all in an amount to be ascertained according to proof at trial.

109.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages

Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for pain

and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

110.   No reasonable federal officer or actor would believe that such conduct was lawful or constitutional.

111.   The actions of Defendants Wilcox, Giconi, Gustafson , Kammrad, White, Reynolds, Brink, Garduno, Does were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted against Plaintiff. As a result of this intentional conduct, Plaintiff is entitled to punitive damages against those Defendants, in an amount sufficient to punish them and to deter others from like conduct.

### Count Four-Englewood
**Unlawful Conditions of Confinement, Eighth Amendment – *Bivens* claim**
**(against FCI Englewood Defendants and Defendant Warden Williams )**

112.   Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

113.   The FCI Englewood Defendants and Defendant Williams confined Plaintiff under cruel and unusual conditions at and FCI Englewood in violation of the Eighth Amendment to the United States Constitution.

114.   These Defendants (Lieutenant Cooper; Lieutenant Starcher, Officer Haight, Lieutenant Sapp, Lieutenant Quezada, Gustafon, and Warden Williams) intentionally inflicted unnecessary and wanton pain and punishment on Plaintiff by, *inter alia*:

- Intentionally confining him in the SHU for over 700 days;

- Intentionally imposing punishment on Plaintiff that was grossly disproportionate to the severity of the alleged offense committed;

- Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries, and excessive and substantial risk of serious harm to Plaintiff's health and safety, resulting from his being confined in the SHU for over 700 days;

- Intentionally confining Plaintiff to in the SHU absent any permissible or legitimate non-punitive objective;

- Confining Plaintiff to the SHU under conditions amounting to cruel and unusual punishment;

- Confining Plaintiff to in the SHU with the intent to inflict cruel and unusual punishment.

115.    In intentionally inflicting unnecessary and wanton pain and punishment upon Plaintiff, the FCI Englewood Defendants and the Warden Defendants violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

116.    As a direct and proximate result of the unnecessary and wanton infliction of pain and punishment on Plaintiff by the FCI Englewood Defendants and Defendant Williams, Plaintiff has suffered, and will continue to suffer, severe physical, mental, emotional, and psychological injuries, as specifically enumerated *supra*.

117.    The actions and omissions of the FCI Englewood Defendants and Defendant Williams were intentional, deliberate, knowing, willful, wanton, and malicious, with the specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

118.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

**Count Five-Florence**
**Unlawful Conditions of Confinement, Eighth Amendment – *Bivens* claim**
**(against FCI Florence Defendants and Defendant Wardens)**

119.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

120.    The FCI Florence Defendants, the Warden Defendants, and Defendants Giconi, and Wilcox, confined Plaintiff under cruel and unusual conditions at FCI Florence in violation of the Eighth Amendment to the United States Constitution.

121.    The FCI Florence Defendants, the Warden Defendants, and Defendants Giconi and Wilcox intentionally inflicted unnecessary and wanton pain and punishment on Plaintiff by, *inter alia*:

- Intentionally confining him in the SHU for over 5 days, prior to being moved to USP Leavenworth.

- Intentionally imposing punishment on Plaintiff that was grossly disproportionate to the severity of the alleged offense committed;

- Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries, and excessive and substantial risk of serious harm to Plaintiff's health and safety, resulting from his being confined in the SHU for over 5 days total after being physically injured by Defendants;

- Intentionally confining Plaintiff to in the SHU absent any permissible or legitimate non-punitive objective;

- Confining Plaintiff to the SHU under conditions amounting to cruel and unusual punishment;

- Confining Plaintiff to in the SHU with the intent to inflict cruel and unusual punishment.

122.    In intentionally inflicting unnecessary and wanton pain and punishment upon Plaintiff, the FCI Florence Defendants and the Warden Defendants violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

123.    As a direct and proximate result of the unnecessary and wanton infliction of pain and punishment on Plaintiff by the FCI Florence Defendants and the Warden Defendants, Plaintiff has suffered, and will continue to suffer, severe physical, mental, emotional, and psychological injuries, as specifically enumerated *supra*.

124.    The actions and omissions of the FCI Florence Defendants and the Warden Defendants were intentional, deliberate, knowing, willful, wanton, and malicious, with the specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

125.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

**Count Six-Englewood**
**Procedural Due Process/Fifth Amendment violation – *Bivens* claim**

30

**(against the FCI Englewood Defendants and the Warden Defendants)**

126.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

127.     Plaintiff had a protected liberty interest in not being confined in the SHU.

128.     Plaintiff's extended confinement in the SHU imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life as a direct and proximate result of, *inter alia*:

- Being intentionally confined in the SHU for over 700 days;

- Receiving punishment that was grossly disproportionate to the severity of the alleged offense committed;

- The harmful and destructive physical, mental, emotional, and psychological injuries, and excessive and substantial risk of serious harm to Plaintiff's health and safety, resulting from his being confined in the SHU for more than 700 days;

- Being intentionally confined to administrative segregation in the SHU in violation of BOP regulations;

- Being intentionally confined to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

- Being intentionally confined to administrative segregation in the SHU under conditions amounting to punishment;

- Being confined to administrative segregation in the SHU with the intent by the Defendants to inflict cruel and unusual punishment.

129.    The FCI Englewood Defendants and the Warden Defendants deprived Plaintiff of his protected liberty interest without due process of law by, *inter alia*:

- Confining Plaintiff to administrative segregation in the SHU in intentional violation of BOP regulations; and

- Intentionally confining Plaintiff to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective.

130.    In depriving Plaintiff of his protected liberty interest without due process of law, the FCI Englewood Defendants and the Warden Defendants violated Plaintiff's rights under the Fifth Amendment to the United States Constitution.

131.    As a direct and proximate result of the deprivation by the FCI Englewood Defendants and the Warden Defendants, of Plaintiff's protected liberty interest without due process of law, in violation of Plaintiff's rights under the Fifth Amendment to the United States Constitution, Plaintiff has suffered, and will continue to suffer from, severe physical, mental, emotional, and psychological injuries, as specifically enumerated *infra*.

132.    Each individual FCI Englewood Defendant and Warden Defendant is liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

133.    The actions and omissions of the FCI Englewood Defendants, and the Warden Defendants were intentional, deliberate, knowing, willful, wanton, and malicious, with the specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the

Fifth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

**Count Seven-Florence**
**Procedural Due Process/Fifth Amendment violation –** *Bivens* **claim**
**(against the FCI Florence Defendants and the Warden Defendants)**

134.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

135.    Plaintiff had a protected liberty interest in not being confined in the SHU.

136.    Plaintiff's extended confinement in the SHU imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life as a direct and proximate result of, *inter alia*:

- Being intentionally confined in the SHU for over 5 days;

- Receiving punishment that was grossly disproportionate to the severity of the alleged offense committed;

- The harmful and destructive physical, mental, emotional, and psychological injuries, and excessive and substantial risk of serious harm to Plaintiff's health and safety, resulting from his being confined in the SHU for more than 1000 days cumlatively;

- Being intentionally confined to administrative segregation in the SHU in violation of BOP regulations;

- Being intentionally confined to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

- Being intentionally confined to administrative segregation in the SHU under conditions amounting to punishment;

- Being confined to administrative segregation in the SHU with the intent by the Defendants to inflict cruel and unusual punishment.

137. The FCI Florence Defendants and the Warden Defendants, deprived Plaintiff of his protected liberty interest without due process of law by, *inter alia*:

- Confining Plaintiff to administrative segregation in the SHU in intentional violation of BOP regulations; and

- Intentionally confining Plaintiff to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective.

138. In depriving Plaintiff of his protected liberty interest without due process of law, the FCI Florence Defendants and the Warden Defendants, violated Plaintiff's rights under the Fifth Amendment to the United States Constitution.

139. As a direct and proximate result of the deprivation by the FCI Florence Defendants and the Warden Defendants of Plaintiff's protected liberty interest without due process of law, in violation of Plaintiff's rights under the Fifth Amendment to the United States Constitution, Plaintiff has suffered, and will continue to suffer from, severe physical, mental, emotional, and psychological injuries, as specifically enumerated *infra*.

140. Each individual FCI Florence Defendant and Warden Defendant is liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

141. The actions and omissions of the FCI Florence Defendants and the Warden Defendants were intentional, deliberate, knowing, willful, wanton, and malicious, with the

specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the Fifth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

**Count Eight**
**Unlawful Conditions of Confinement, Eighth Amendment – *Bivens* claim**
**(against USP McCreary Defendants)**

142.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

143.    USP McCreary Defendants confined Plaintiff under cruel and unusual conditions at USP McCreary in violation of the Eighth Amendment to the United States Constitution.

144.    Defendants intentionally inflicted unnecessary and wanton pain and punishment on Plaintiff by, *inter alia*:

- Intentionally confining him in the SHU for over 120 days;

- Intentionally imposing punishment on Plaintiff that was grossly disproportionate to the severity of the alleged offense committed;

- Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries, and the excessive and substantial risk of serious harm to Plaintiff's health and safety resulting from his being confined in the SHU for over 120 days;

- Intentionally confining Plaintiff to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

- Confining Plaintiff to administrative segregation in the SHU under conditions amounting to cruel and unusual punishment;

- Confining Plaintiff to administrative segregation in the SHU with the intent to inflict cruel and unusual punishment;

- Notifying and conspiring with violent prisoners whom Defendants knew presented a substantial risk of serious harm to Plaintiff, due to Plaintiff's known political and anti-racist activism;

- Intentionally and/or recklessly failing to abate or take any other reasonable measure to abate the known substantial risk of serious harm faced by Plaintiff in remaining confined in the SHU, or other holding areas along with the violent prisoners against whom Plaintiff was known for anti-racist ideology, and were known to Defendants as presenting overt threats of violence to Plaintiff;

- Intentionally placing Plaintiff in a locked room with a violent white supremacist prisoner, knowing that such prisoner knew of and had threatened Plaintiff;

- Intentionally placing Plaintiff in a locked cell with another known violent prisoner, knowing that such prisoner had a history of assaulting his cellmates.

145.   By intentionally inflicting unnecessary and wanton pain and punishment upon Plaintiff, USP McCreary Defendants violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

146.   As a direct and proximate result of the unnecessary and wanton infliction of pain and punishment on Plaintiff by USP McCreary Defendants, Plaintiff has suffered, and will continue to suffer from, severe physical, mental, emotional, and psychological injuries, as specifically enumerated above.

147.    The actions and omissions of USP McCreary Defendants were intentional, deliberate, knowing, willful, wanton, malicious, with the specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

148.    Each individual USP McCreary Defendant is liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

### Count Nine
**Unlawful Conditions of Confinement, Eighth Amendment – *Bivens* claim**
**(against USP Leavenworth Defendants and Leavenworth Doe Defendants)**

149.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

150.    USP Leavenworth Defendants and Leavenworth Doe Defendants confined Plaintiff under cruel and unusual conditions at USP Leavenworth in violation of the Eighth Amendment to the United States Constitution.

151.    Defendants intentionally inflicted unnecessary and wanton pain and punishment on Plaintiff by, *inter alia*:

- Intentionally confining him in the SHU for over 186 days;

- Intentionally imposing punishment on Plaintiff that was grossly disproportionate to the severity of the alleged offense committed;

- Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries, and the

excessive and substantial risk of serious harm to Plaintiff's health and safety

resulting from his being confined in the SHU for over 186 days;

- Intentionally confining Plaintiff to administrative segregation in the SHU

    absent any permissible or legitimate non-punitive objective;

- Confining Plaintiff to administrative segregation in the SHU under conditions

    amounting to cruel and unusual punishment;

- Confining Plaintiff to administrative segregation in the SHU with the intent to

    inflict cruel and unusual punishment;

152.    USP Leavenworth Defendants and Doe Defendants violated Plaintiff's rights

under the Eighth Amendment to the United States Constitution.

153.    As a direct and proximate result of the unnecessary and wanton infliction of pain

and punishment on Plaintiff by USP Leavenworth Defendants and Leavenworth Doe Defendants,

Plaintiff has suffered, and will continue to suffer from, severe physical, mental, emotional, and

psychological injuries, as specifically enumerated above.

154.    The actions and omissions of USP Leavenworth Defendants and Leavenworth

Doe Defendants were intentional, deliberate, knowing, willful, wanton, and malicious, with the

specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the

Eighth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of

punitive damages.

155.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages

Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for

medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life,

and punitive damages against the individual defendants in an amount according to proof.

**Count Ten**
**Unlawful Conditions of Confinement, Eighth Amendment – *Bivens* claim**
**(against USP Lee Doe Defendants)**

156.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

157.    USP Lee Doe Defendants confined Plaintiff under cruel and unusual conditions at USP Lee in violation of the Eighth Amendment to the United States Constitution.

158.    Defendants intentionally inflicted unnecessary and wanton pain and punishment on Plaintiff by, *inter alia*:

- Intentionally confining him in the SHU for 13 days;

- Intentionally imposing punishment on Plaintiff that was grossly disproportionate to the severity of the alleged offense committed;

- Knowing of, and intentionally and deliberately disregarding, the harmful and destructive physical, mental, emotional, and psychological injuries, and the excessive and substantial risk of serious harm to Plaintiff's health and safety resulting from his being confined in the SHU for 13 days;

- Intentionally confining Plaintiff to administrative segregation in the SHU absent any permissible or legitimate non-punitive objective;

- Confining Plaintiff to administrative segregation in the SHU under conditions amounting to cruel and unusual punishment;

- Being confined to administrative segregation in the SHU with the intent to inflict cruel and unusual punishment;

159.    In intentionally inflicting unnecessary and wanton pain and punishment upon USP Lee Doe Defendants violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

160.    As a direct and proximate result of the unnecessary and wanton infliction of pain and punishment on Plaintiff by USP Lee Doe Defendants, Plaintiff has suffered, and will continue to suffer from, severe physical, mental, emotional, and psychological injuries, as specifically enumerated above.

161.    The actions and omissions of USP Lee Doe Defendants were intentional, deliberate, knowing, willful, wanton, and malicious, with the specific intent of inflicting punishment upon Plaintiff, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution, thereby entitling Plaintiff to an award of punitive damages.

162.    The individual Defendants are liable to Plaintiff under *Bivens* for the damages Plaintiff sustained, as alleged herein, including but not limited to compensatory damages for medical bills, pain and suffering, humiliation, emotional distress and loss of enjoyment of life, and punitive damages against the individual defendants in an amount according to proof.

## SECOND CAUSE OF ACTION
## 5 U.S.C. § 702 / APA

163.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

164.    Defendant BOP is an agency that is generally subject to the Administrative Procedure Act (APA). *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1239 (10th Cir. 2005).

165.    The APA requires that agencies follow their own procedures where the rights of individuals are affected. 5 U.S.C. § 706(2)(D).

166.    Plaintiff has been held in the SHU for over 1000 days in violation of the BOP's own procedures and federal regulations and statutes.

167.    By denying Plaintiff any hearings relating to his status in the SHU, by not giving him notice of his status as it relates to his continual housing in the SHU, and by declining to continually review his status and provide updates, Defendant BOP is violating its own Program Statement 5270.11, 18 U.S.C. §§ 4042(a)(2)-(3), and 28 C.F.R. §§ 541.20-33.

168.    The purported permanent phone ban also violates BOP's policies and the statutes and regulations authorizing those policies.

169.    Plaintiff is entitled to a declaration that Defendant BOP violated the APA by violating its own procedures and the regulations and statutes that govern its operations.

170.    In addition, Plaintiff is entitled to such relief as the Court deems just and proper, including but not limited to: an order that BOP must comply with its rules regarding placing prisoners in the SHU; setting aside the orders that placed Plaintiff in the SHU; immediately granting Plaintiff the live hearings and/or reviews he has been denied; ordering that Plaintiff be immediately released from segregation and placed in general population, with restoration of all rights and privileges; ordering that Plaintiff be moved to a low-security BOP facility; ordering all disciplinary convictions stemming from Defendants' fabricated citations be expunged from Plaintiff's institutional record; revoking the purported permanent phone ban; and ordering that any "good time" that was previously denied him as a result of the convictions be restored.

171.    Defendant BOP is liable to Plaintiff for statutory attorneys' fees and costs according to proof, pursuant to 28 U.S.C. 2412.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants, and each of them, as follows:

(1)   Economic and noneconomic damages, as alleged herein (*Bivens* claims only);

(2)   Punitive damages against the individual defendants in an amount according to proof (on the *Bivens* claims <u>only</u>);

(3)   Declaratory relief on the APA claim;

(4)   Injunctive relief on the APA claim, including but not limited to ordering that:

   1.   BOP must comply with its rules regarding placing prisoners in the SHU;

   2.   Plaintiff be immediately released from segregation and placed in general population, with restoration of all rights and privileges;

   3.   Plaintiff be moved to a low-security BOP facility;

   4.   All disciplinary convictions stemming from Defendants' fabricated citations be expunged from Plaintiff's institutional record, and any "good time" that was previously denied him as a result of the convictions be restored;

   5.   Revocation of the purported permanent phone ban;

   6.   In the alternative, that Plaintiff be immediately granted the hearings and/or reviews he has been denied; and

(5)   such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to each and every cause of action against each and every Defendant to the full extent allowed by law.

Respectfully submitted August 5, 2021.

Respectfully submitted,

LAUREN REGAN

/s/Lauren Regan

The Civil Liberties Defense Center
Oregon State Bar #970878
Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, Oregon 97401
541.687.9180
lregan@cldc.org

Attorney for Plaintiff