IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01421-CNS-KAS

ERIC KING,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
CATHY GOETZ, former Warden FCI Florence,
D.K. LENNON, Acting Warden FCI Florence,
NICOLE ENGLISH, Regional Director and Former Warden, USP Leavenworth,
JOHN F. WILLIAMS, Warden, FCI Englewood,
ERLINDA HERNANDEZ, Associate Warden, FCI Florence,
TONYA HAWKINS, Warden, FCI Florence,
DONALD WILCOX,
JEFFREY KAMMRAD,
ROBERT GICONI,
DUSTIN GUSTAFSON,
KEVIN CARROLL,
RICHARD WHITE,
ALFRED GARDUNO,
TERRA BRINK aka Terra Maine,
MICHELLE ABRAHAM,
LEANNE REYNOLDS,
RONALD BATOUCHE,
LOREENA FRABONI,
D. CHRISTENSEN,
MARK MELVIN,
LIEUTENANT JARED HERBIG, Special Investigative Services, USP Leavenworth,
LIEUTENANT QUEZADA, Special Investigative Services, FCI Englewood,
CAPTAIN SAPP,
LIEUTENANT STARCHER,
JOHN DOES 1-10, Unknown Federal Agents or Employees (FCI Florence Does and USP Leavenworth Does), and
JOHN DOES 11-15, Segregation Review Officials (SRO) for USP Leavenworth and FCI Englewood,

    Defendants.

1

# ORDER

Before the Court is Defendants' Motion to Dismiss. ECF No. 184. For the reasons below, the motion is GRANTED.

## I. BACKGROUND

The alleged events occurred while Plaintiff was in the custody of the Federal Bureau of Prisons (BOP) between 2018 and 2023.[1] *See* ECF No. 184 at 3–4. Plaintiff's claims are based on numerous events that occurred throughout that time period: an assault in 2018; denial of medical care; an assault in 2020; a conspiracy to harm Plaintiff by housing him with white supremacists; retaliation against Plaintiff while he was in pretrial custody; interference with trial; interference with the administrative process; and burdening Plaintiff's religious exercise. ECF No. 139 (Fourth Amended Complaint), ¶¶ 22–26, 31–47, 50–54. Plaintiff alleges that BOP staff were "unlawfully targeting and retaliating against Mr. King based on his Wiccan and antiracist beliefs, associations, and statements." *Id.*, ¶ 45.

Plaintiff initiated this action on May 25, 2021. ECF No. 1. He filed a first amended complaint on August 5, 2021, a second amended complaint on December 12, 2021, a third amended complaint on June 17, 2022, and a fourth amended complaint on July 17, 2023, which remains the operative complaint. ECF Nos. 11, 34, 93, 139. Defendants filed the present motion to dismiss on May 6, 2024. ECF No. 184. Plaintiff responded on May 28, and Defendants replied on June 11. ECF Nos. 187, 188.

---

[1] Plaintiff was released from custody on February 23, 2024. ECF No. 184-1, ¶ 4.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

To survive a Rule of Civil Procedure 12(b)(1) motion to dismiss, "a plaintiff must demonstrate that the court has subject matter jurisdiction." *Audubon of Kan., v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "A Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) by "facial[] attack [of] the complaint's allegations." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1000, 1002 (10th Cir. 1995). When a party brings a facial attack, courts must accept a complaint's allegations as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court must take all the factual allegations in the complaint

3

as true and "view these allegations in the light most favorable" to the nonmoving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). On a Rule 12(b)(6) motion, a court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the [] complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

### III.  ANALYSIS

#### A.  Dismissed Claims (4, 7, 10, 11, 13, 14, 19, 20)

First, Plaintiff concedes dismissal of the Administrative Procedure Act (APA) claims (claims 19 and 20); the Religious Freedom Restoration Act (RFRA) claims (claims 7 and 13); and the *Bivens* claims for excessive force, pretrial punishment, trial interference, and housing placement (claims 4, 10, 11, and 14). ECF No. 187 (Response) at 1. Accordingly, the Court dismisses claims 4, 7, 10, 11, 13, 14, 19, and 20.

#### B.  Federal Tort Claims Act (FTCA) Claims (15, 16, 17, 18)

Defendants argue that Plaintiff's FTCA claims must be dismissed because he has not exhausted his administrative remedies, as required. The Court agrees and finds that it lacks jurisdiction to hear the FTCA claims.

The FTCA allows suit against the United States for money damages resulting from the allegedly negligent or wrongful actions of federal employees taken within the scope of their employment. 28 U.S.C. § 2679(b)(1). To bring an FTCA claim, claimants must first exhaust their administrative remedies by providing: (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation and (2) a sum certain damages claim. *See Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citing 28 C.F.R. § 14.2(a)). The agency (here, the BOP) is

4

provided six months to review the administrative claim before the claimant can bring suit; after six months, the claim is deemed constructively denied. 28 U.S.C. § 2675(a). These requirements are jurisdictional. *Bradley*, 951 F.2d at 270.

1. *Claims 15, 16, and 17*

Plaintiff did not file an FTCA administrative claim related to the allegations in claims 15–17, and thus he failed to exhaust administrative remedies and the Court lacks jurisdiction over these claims. The only indication of such a filing is the allegation that "[o]n October 22, 2018, Plaintiff served an FTCA claim on Defendant United States by and through the Western Regional Office of the BOP." ECF No. 139, ¶ 252. However, the administrative remedy history that Plaintiff attached to his fourth amended complaint, ECF No. 139-2, does not include any record of such a filing. "[A]lthough we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). Nor does Plaintiff mention the alleged filing in his response, instead arguing that exhaustion was unavailable. ECF No. 187 at 1–2. The Court assumes that Plaintiff abandoned the allegation of the October 22, 2018 FTCA filing, which is plainly disputed by his response and by the documents attached to the complaint. Because the record contradicts Plaintiff's statement that he filed an FTCA complaint on October 22, and there is no other evidence that such a complaint exists, the Court need not accept the allegation as true. Thus, Plaintiff did not exhaust his administrative remedies as to claims 15, 16, and 17.

Plaintiff argues that he did not need to exhaust his administrative remedies because administrative remedies were unavailable to him. *See, e.g.,* ECF No. 187 at 4 (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016) for the proposition that "[u]nder § 1997e(a) [detailing the Prison Litigation Reform Act (PLRA)'s administrative exhaustion requirement], the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). However, the unavailability standard that Plaintiff cites applies to the PLRA, not the FTCA. The majority of courts have held that the PLRA's unavailability doctrine does not apply to FTCA claims. *See, e.g., Grenne v. United States*, No. 21-5398, 2022 WL 13638916, at *5 (6th Cir. Sept. 13, 2022) (citing *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 424–25 (D.D.C. 2020), *aff'd*, 2021 WL 2525679 (D.C. Cir. June 2, 2021)); *Balter v. United States*, No. 1:17cv1188, 2019 WL 1394368, at *3 (E.D. Va. Mar. 27), *aff'd*, 788 F. App'x 245 (4th Cir. 2019)). The PLRA states that "no action shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The FTCA does not include language about availability, instead including a "presentment" requirement: "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). The above courts have reasoned that, because the FTCA statute does not include the PLRA's availability language, the unavailability doctrine does not apply to FTCA claims.

The Court cannot circumvent the FTCA's exhaustion requirements. Courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v.*

6

*Russell*, 551 U.S. 205, 214 (2007). Because Plaintiff did not file an FTCA administrative claim related to the 2018 assault, the Court lacks jurisdiction to hear claims 15, 16, and 17.

### 2. Claim 18

Plaintiff did bring an FTCA administrative claim regarding the 2020 alleged assault. However, he brought this action before the six-month claim period had ended, and so the administrative claim was not exhausted when he initiated the lawsuit. The Court thus lacks jurisdiction over claim 18.

The government has a six-month period within which to make a final disposition of an FTCA claim; after that period, it is deemed constructively denied. 28 U.S.C. § 2675(a). If a plaintiff commenced an action prior to expiration of the six-month period, the FTCA claim is not considered exhausted and the court lacks jurisdiction over it. *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999). The lack of jurisdiction cannot be cured through amendment, so if the FTCA claim was not exhausted at the time the suit was initiated, the Court must dismiss the claim. *Id.* ("[A] premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit."). Here, the claim was dated February 23, 2021 and was received by the BOP on March 1, 2021. *See* ECF No. 184-1 (Herbig Decl.) at 4, ¶¶ 8–10. Plaintiff did not receive a response, and the claim's denial was dated November 9, 2021. *Id.* The six-month claim period expired on August 23, 2021. Therefore, Plaintiff could not have administratively exhausted this claim before August 23. However, he commenced this action on May 25, 2021, before the FTCA claim was administratively exhausted. ECF No. 1 at 33–34. Because Plaintiff did not exhaust his

administrative remedies prior to filing suit, the Court does not have jurisdiction over claim 18.

### C. Section 1985(3) Claims (Claims 1, 2, and 6)

Plaintiff claims that Defendants conspired to deprive him of his rights in violation of 42 U.S.C. §1985(3). To state a claim for relief under §1985(3), a plaintiff must show: (1) a conspiracy between two or more persons; (2) to deprive plaintiff(s) of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971)). Section 1985(3) has been interpreted to include a "class" requirement, meaning that the conspiracy must be based on some racial, or "perhaps otherwise class-based," invidious discriminatory animus. *Griffin*, 403 U.S. at 91. *Griffin* did not determine which other classes, if any, would satisfy the class requirement. *See id.* The Supreme Court later narrowed the available classes by rejecting the argument that § 1985(3) covered conspiracies motivated by economic, political, or commercial animus. *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983). The Tenth Circuit limits acceptable classes to those "already expressly provided for" by the Supreme Court, which it defined as those "involved in the strife in the South in 1871 with which Congress was then concerned." *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983).

Defendants argue that the § 1985(3) claims should be dismissed for three reasons: first, Plaintiff is not a member of a protected class to whom these claims are available; second, Defendants are entitled to qualified immunity; and third, some claims are time-barred. The Court agrees.

8

*1. Class Requirement*

Plaintiff claims that he is part of a protected class: "white abolitionist supporters of emancipation and Black rights." ECF No. 187 at 9. In support, he cites a footnote in a Supreme Court case stating that "a racial conspiracy against [B]lack [people] does not lose that character when it targets in addition white supporters of [B]lack rights," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271 n.2 (1993), and another case stating that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against [Black people] and those who championed their cause." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983). Both cases, Plaintiff argues, recognized that §1985(3) claims were available to supporters of a protected class as well as to members of the class. The Court assumes without deciding that § 1985(3) claims are available to supporters of a protected class, even where there are no members of the protected class being targeted.

*2. Qualified Immunity*

Qualified immunity protects public officials in civil actions brought against them "in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). To overcome the presumption of qualified immunity, a plaintiff must show that the defendant (1) violated a statutory or constitutional right that (2) was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Conduct violates clearly established law when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up). While a case on point is not necessary,

9

"existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Defendants are entitled to qualified immunity because the law on whether an intra-agency agreement meets the "conspiracy" element of a § 1985(3) claim was not clearly established. For a conspiracy to exist, "there must be a meeting of the minds of the conspirators regarding the general conspiratorial objective." *Ganzy v. Douglas Cnty. Sch. Dist. RE-1*, 2024 WL 4002796, at *3 (D. Colo. Aug. 8, 2024) (citations omitted). While there need not be an express agreement, the allegations in the complaint must show a "concerted effort" to engage in the "general conspiratorial objective." *Id.*

Here, Plaintiff alleges that the conspiracies existed between officials working for the same agency, the BOP. However, the law was not clearly established, at the time of the events, that agents of the same organization can conspire together to satisfy the first element of a § 1985(3) claim. The debate is whether the intracorporate-conspiracy doctrine applies to § 1985(3) cases; that is, whether different officials working for the same entity can conspire with each other, since their actions are attributable to the same principal. The Supreme Court noted the circuit split on this issue and held that "the fact that the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established." *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). Thus, "reasonable officers in petitioners' positions would not have known with any certainty that the alleged agreements were forbidden by law." *Id.* at 155. In *Ziglar,* the § 1985(3) claim was that wardens at a prison conspired with one another to hold respondents in harsh conditions because of their race, religion, or national origin in violation of various

provisions of the Constitution. *Id.* at 129–30. The Supreme Court held that these wardens were entitled to qualified immunity.

For the same reason here, the law was not clearly established that officials of the same agency, the BOP, can conspire with each other. The Supreme Court never resolved the circuit split, so the law is still unclear. *See Ziglar*, 582 U.S. at 154 ("Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation."). Nor does Plaintiff point to a Tenth Circuit case holding that a conspiracy can exist between employees of the same agency. Thus, a reasonable official could not have reasonably known that agreements with other BOP employees could subject them to liability. Because the law was not clearly established that an agreement between employees of the same agency could constitute a conspiracy under § 1985(3), Defendants are entitled to qualified immunity where no outside coconspirators are alleged.

*i. Claims One and Six*

There is no allegation in claims one or six that a conspiracy existed beyond agents of the BOP. The conspiracy allegation in claim one is that "the above-named Defendants did unlawfully and knowingly conspire for the purpose of depriving Mr. King" of equal protection and privileges under the laws. ECF No. 139, ¶ 175. There is no allegation that anyone other than Defendants, who are all BOP employees, was involved in this alleged conspiracy. Because the law was not clearly established that agents of the same agency can conspire, and the alleged conspiracy in claim one only involved BOP employees, Defendants are entitled to qualified immunity as to claim one.

11

Similarly, Defendants are entitled to qualified immunity as to claim six. The conspiracy allegation in claim six is that the "above-named Defendants, as well as unnamed coconspirators," conspired to deprive Mr. King of equal protection of the laws and equal privileges and immunities. *Id.*, ¶ 203. However, simply alleging that "unnamed coconspirators" were involved does not preserve this claim. There is no indication that the unnamed coconspirators were outside the BOP. In fact, Plaintiff brought suit against numerous John Doe BOP employees who could be these unnamed coconspirators. Thus, because there is no allegation that individuals outside the BOP were involved in this alleged conspiracy, Defendants are entitled to qualified immunity as to claim six.

### ii. Claim Two

Defendants may also be entitled to qualified immunity as to claim two. However, regardless, this claim is time-barred.

The conspiracy allegation in claim two is that "the above-named Defendants, as well as USP Leavenworth officials, USP McCreary officials, and USP Lee officials conspired with white supremacist prisoners to harm Mr. King and interfere with his rights by purposefully housing Mr. King with known violent white supremacists and racially motivating these prisoners to attack Mr. King and deprive Mr. King of the privileges and immunities of the law based on Mr. King's antiracist beliefs and association with Black people." *Id.*, ¶ 180. The Court assumes without deciding that the allegation that the BOP officials conspired with white supremacist prisoners to harm Plaintiff sufficiently alleges that a conspiracy existed beyond just the BOP Defendants, although it is skeptical that Plaintiff could prove the requisite meeting of the minds.

However, regardless, this claim is time-barred. The applicable statute of limitations for Section 1985 claims is two years. *See* Colo. Rev. Stat. § 13-80-102; *Lyons v. Kyner*, 367 Fed. App'x. 878, 881 (10th Cir. 2010) ("For conspiracy claims under § 1985(3), courts have also applied the forum state's personal-injury statute of limitations."). The claim here alleges a conspiracy between the Defendants at USP Leavenworth, USP McCreary, and USP Lee; however, Plaintiff alleges that he moved out of each of these three facilities in 2019. The two-year statute of limitations period thus expired in 2021, which was two years before Plaintiff first brought this claim. Thus, claim two is time-barred. The Court dismisses Plaintiff's § 1985(3) claims.

### D. Section 1986 Claims (3, 8, 9)

Plaintiff's Section 1986 claims must also be dismissed. A § 1986 claim "depends on the existence of a valid claim under § 1985." *Wright v. No Skiter Inc.* 774 F.2d 422, 426 (10th Cir. 1985). If there is no alleged conspiracy under § 1985, the "knowledge of the conspired wrongs" requirement of a § 1986 claim cannot exist. *See Ganzy*, 2024 WL 4002796, at *6.[2] Because Plaintiff did not adequately plead a § 1985 conspiracy, the Court must dismiss his § 1986 claims as well.

### E. Eighth Amendment *Bivens* Claims (5, 12)

Defendants argue that Plaintiff's *Bivens* claims are not available because they are foreclosed by the BOP's Administrative Remedy Program (ARP). The Court agrees.

*Bivens* claims are not available when alternative remedies are available. *See Egbert v. Boule*, 596 U.S. 482, 493 (2022). The Supreme Court noted that, if "there are

---

[2] While the court in *Ganzy* held that a plaintiff need not *bring* a § 1985 claim for their § 1986 claim to be viable, the plaintiff must still allege the existence of "wrongs conspired to be done, and mentioned in section 1985 of this title."  *Ganzy*, 2024 WL 4002796, at *6; 42 U.S.C. § 1986.

13

alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* The rationale is that *Bivens* is only concerned with "deterring the unconstitutional acts of individual officers," so if other remedies existed that provided adequate deterrence, a *Bivens* action was not available. *Id.* The Tenth Circuit has since explicitly held that the BOP's ARP is a sufficient alternative remedy and that *Bivens* actions are not available. *See Noe v. United States et al.*, No. 23-1025, 2023 WL 8868491, *3 (10th Cir. Dec. 22, 2023) ("[T]he availability of the ARP is sufficient to foreclose a *Bivens* claims"); *Hayes v. Doe*, No. 23-1330, 2024 WL 260521, at *4 (10th Cir. Jan. 24, 2024) (holding that the ARP "foreclosed" *Bivens* claims). Because the ARP is available, the Court dismisses Plaintiff's *Bivens* claims.

## IV. CONCLUSION

Consistent with the above analysis, the Court GRANTS Defendants' motion to dismiss, ECF No. 184. The Clerk of Court is directed to close the case.

DATED this 30th day of January 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge